UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **NASHVILLE PHARMACY SERVICES, LLC**, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION** |
| **MAMMOTH MEDS.COM, INC.**, and **JOHN DOES 1-10**, | |
| Defendants. | |

## COMPLAINT

Plaintiff, Nashville Pharmacy Services, LLC, individually and on behalf of the class defined below, alleges the following against Defendants, Mammoth Meds.com, Inc. ("Mammoth"), and John Does 1-10:

## INTRODUCTION

1. This lawsuit challenges Mammoth's practice of sending unsolicited facsimiles.

2. The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, codified at 47 U.S.C. § 227 (the "Act"), and the regulations promulgated thereunder, prohibit a person or entity from faxing advertisements, or having an agent fax advertisements, without the recipient's prior express invitation or permission. The Act provides a private right of action and provides for injunctive relief and statutory damages of $500 per violation.

3. On information and belief, Mammoth has sent facsimile transmissions of unsolicited advertisements to Plaintiff and the class in violation of the Act, including but not

limited to the unsolicited fax advertisements sent to Plaintiff on or about February 24, 2018, true and correct copies of which are attached hereto as <u>Exhibit A</u>. The faxes in <u>Exhibit A</u> describe the commercial availability or quality of Mammoth's products, goods, and services. On information and belief, Mammoth has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the Act, including but not limited to the fax advertisements sent to Plaintiff.

4. Unsolicited faxes damage the recipients. A junk fax recipient loses the use of its fax machine, paper, and ink or toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

5. On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Mammoth under the Act. Plaintiff seeks to certify a class of recipients of the faxes sent to Plaintiff and recipients of other fax advertisements sent without prior express invitation or permission, whether sent to Plaintiff or not..

6. This action seeks relief expressly authorized by the Act: (i) injunctive relief enjoining Mammoth, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the Act; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the Act, and to have such damages trebled, as provided by 47 U.S.C. § 227(b)(3).

## PARTIES

7. Plaintiff, Nashville Pharmacy Services, LLC, is a Tennessee limited liability company. Plaintiff owns and operates pharmacies in Tennessee, where it maintains telephone facsimile equipment.

8. Defendant Mammoth Meds.com, Inc., is a Florida corporation with its principal place of business at 3081 E Commercial Blvd, Ste 200, Ft. Lauderdale, Florida 33308. Mammoth may be served at the same address.

9. John Does 1-10 are persons or entities who were involved in sending faxes to Plaintiff and the class members. John Does 1-10 will be identified through discovery but are not presently known to Plaintiff.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331.

11. This Court has personal jurisdiction over Mammoth because Mammoth transacts business in this judicial district, has solicited business in this judicial district, has made contacts within this judicial district, and/or has committed tortious acts within this judicial district.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2).

## FACTS

13. Mammoth transmitted by telephone facsimile machine unsolicited facsimiles to Plaintiff on February 24, 2018. Copies of the facsimiles are attached hereto as <u>Exhibit A</u>.

14. Plaintiff's telephone facsimile equipment printed the faxes when they were received, causing Plaintiff to lose paper and ink or toner.

3

15. On information and belief, Mammoth receives some or all of the revenues from the sale of the products, goods, and services advertised on the facsimiles, and Mammoth profits and benefits from the sale of the products, goods, and services.

16. Plaintiff did not give prior express invitation or permission to Mammoth to send the facsimiles.

17. The facsimiles do not display a proper opt-out notice as required by 47 U.S.C. § 227 and 47 C.F.R. § 64.1200.

18. On information and belief, Mammoth faxed the same and other unsolicited facsimiles without a proper opt-out notice to Plaintiff and at least 40 other recipients or sent the same and other advertisements by fax with the required opt-out notice but without first receiving the recipients' express invitation or permission or without having an established business relationship as defined by the Act and its regulations.

19. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## CLASS ACTION ALLEGATIONS

20. In accordance with Fed. R. Civ. P. 23(b)(1), (b)(2), and (b)(3), Plaintiff brings this class action pursuant to the Act, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Mammoth, and (3) from whom Mammoth did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Mammoth did not have an established business relationship, or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

Excluded from the class are Mammoth, its employees, agents, and members of the Judiciary. Plaintiff seeks to certify a class which includes, but is not limited to, the fax advertisements sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

21. Numerosity – Fed. R. Civ. P. 23(a)(1). On information and belief, the number of persons and entities of the class is numerous and joinder of all members is impracticable. On information and belief, the number of class members is at least 40.

22. Commonality – Fed. R. Civ. P. 23(a)(2). Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

(a) Whether Mammoth sent unsolicited fax advertisements;

(b) Whether Mammoth's faxes sent to other persons, not the Plaintiff, constitute advertisements;

(c) Whether Mammoth's faxes advertised the commercial availability or quality of property, goods, or services;

(d) The manner and method Mammoth used to compile or obtain the list of fax numbers to which Mammoth sent the faxes included in Exhibit A, other unsolicited faxed advertisements, or other advertisements without a proper opt-out notice;

(e) Whether Mammoth faxed advertisements without first obtaining the recipient's prior invitation or permission;

(f) Whether Mammoth sent the faxed advertisements knowingly;

(g) Whether Mammoth violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

5

(h) Whether the faxes contain an opt-out notice that complies with the requirements of 47 U.S.C. § 227(b)(1)(C)(iii), and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(i) Whether Mammoth should be enjoined from faxing advertisements in the future;

(j) Whether Plaintiff and the other members of the class are entitled to statutory damages; and

(k) Whether the Court should award treble damages.

23. Typicality – Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxes as the faxes sent by or on behalf of Mammoth advertising products, goods, and services of Mammoth during the class period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Mammoth has acted in the same or in a similar manner with respect to the Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes that did not contain a proper opt-out notice or were sent without prior express invitation or permission.

24. Adequate Representation – Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the class members. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

25. Need for Consistent Standards and Practical Effect of Adjudication – Fed. R. Civ. P. 23(b)(1). Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Mammoth, and/or (b) as a practical matter, adjudication of

6

the Plaintiff's claims will be dispositive of the interests of class members who are not parties.

26. Common Conduct – Fed. R. Civ. P. 23(b)(2). Class certification is also appropriate because Mammoth has acted in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. Plaintiff demands such relief as authorized by 47 U.S.C. § 227.

27. Predominance and Superiority – Fed. R. Civ. P. 23 (b)(3). Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Mammoth may assert and attempt to prove will come from Mammoth's records and will not require individualized or separate inquiries or proceedings;

(c) Mammoth has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Mammoth identified persons to receive the fax transmissions and it is believed that Mammoth's and/or Mammoth's agents' computers and business records will enable the Plaintiff to readily identify class members and establish

liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proof;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and will foster economics of time, effort, and expense;

(v) A class action will contribute to uniformity of decisions concerning Mammoth's practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## CLAIM FOR RELIEF
## VIOLATION OF THE JUNK FAX PREVENTION ACT
## 47 U.S.C. § 227, *et seq.*

28. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

29. The Act makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

30. The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

31. The Act requires that the senders of fax advertisements place an opt-out notice on

8

the facsimile transmissions. The opt-out notice, among other things, must be clear and conspicuous on the first page of the transmission, must state that the recipient is entitled to opt out of receiving future fax advertisements, and must state that the sender must honor a recipient's opt-out notice request within 30 days and that the sender's failure to do so is unlawful.

32. Mammoth sent fax advertisements to Plaintiff on or about February 24, 2018, via facsimile transmissions from telephone facsimile machines, computers, or other devices to the telephone line and facsimile machine of Plaintiff. The faxes sent to Plaintiff constituted advertisements under the Act. Mammoth failed to comply with the Act's opt-out requirements in connection with the faxes. The faxes sent to Plaintiff were transmitted without Plaintiff's prior express invitation or permission. Alternatively, Mammoth is precluded from asserting any prior express invitation or permission and is precluded from asserting that it had an established business relationship with Plaintiff because of its failure to comply with the Act's opt-out requirements. Mammoth thus violated the Act and its regulations by sending the fax advertisements via facsimile transmissions to Plaintiff. Plaintiff seeks to certify a class that includes the recipients of the faxes and all other faxes sent during the four years prior to the filing of this case through the present.

33. On information and belief, during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Mammoth has sent, via facsimile transmissions from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of the class members, other faxes that constitute advertisements under the Act that were transmitted without the class members' prior express invitation or permission. Alternatively, Mammoth is precluded from asserting any prior express invitation or permission and is precluded from asserting that it had an established business relationship with the class members because of its failure to comply with the Act's opt-out requirements in connection with such transmissions. Mammoth

thus violated the Act and the regulations promulgated thereunder. On information and belief, Mammoth may be continuing to send unsolicited advertisements via facsimile transmissions in violation of the Act and the regulations promulgated thereunder, and, absent intervention by this Court, Mammoth will continue to do so in the future.

34. The Act provides a private right of action to bring this action on behalf of Plaintiff and the class to redress Mammoth's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

35. The Act is a strict liability statute, so Mammoth is liable to Plaintiff and the other class members even if their actions were only negligent.

36. Mammoth knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Mammoth or any other person to fax advertisements about Mammoth's products, goods, or services; (b) Plaintiff and the other class members did not have an established business relationship with Mammoth; (c) Mammoth transmitted the fax advertisements; (d) the faxes did not contain a proper opt-out notice; and (e) Mammoth's transmission of fax advertisements that did not contain a proper opt-out notice or that were sent without prior express invitation or permission was unlawful.

37. Mammoth's actions caused damages to the Plaintiff and the other class members. Receiving Mammoth's junk faxes caused Plaintiff and the other recipients to lose paper and toner and/or ink consumed in the printing of Mammoth's faxes. Moreover, Mammoth's faxes used the Plaintiff's and the other class members' telephone lines and fax machines. Mammoth's faxes cost Plaintiff and the other class members time, as the Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Mammoth's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's and the other class members' business

10

Case 3:18-cv-00671   Document 1   Filed 07/19/18   Page 10 of 11 PageID #: 10

activities. Mammoth's faxes unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff and the class members pray:

A. That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, certify the class defined herein, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court enter judgment in favor of Plaintiff and the class members and against Defendants, jointly and severally, for actual monetary losses sustained or the sum of $500 for each violation of the Act, whichever is greater, and that the Court award treble damages of $1,500 if the violations are found to be "willful and knowing";

C. That the Court grant Plaintiff and the class members equitable relief enjoining Mammoth and its agents from additional violations of the Act; and

D. That the Court award Plaintiff and the class members pre-judgment interest, costs of this suit, and such further relief as the Court may deem just and proper.

Dated: July 19, 2018.                                  Respectfully submitted,

                                                      /s/ Charles Barrett
Charles Barrett (#20627)
Benjamin C. Aaron (#34118)
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: (615) 244-1713
Fax: (615) 726-0573
cbarrett@nealharwell.com
baaron@nealharwell.com